UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| HERBERT O. KELLER, JR., | |
| Plaintiff, | Case No. EDCV 10-00934 AJW |
| v. | MEMORANDUM OF DECISION |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | |
| Defendant. | |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the relatively complex procedural history of this case, which involves three stipulated remands for further administrative proceedings and several administrative hearings.[1] [See JS 2-3]. Plaintiff already has been adjudicated disabled as of April 1, 2006. [JS 2-4]. In this action, plaintiff

---

[1] Administrative hearings were conducted in November 2003 [Administrative Record ("AR") 143-165]; March 2006 [AR 431-466]; November 2007 [AR 892-924]; and July 2009 [AR 976-1008].

seeks judicial review of a final written hearing decision by an administrative law judge (the "ALJ") concluding that plaintiff was not disabled between August 11, 2002, his alleged date of onset of disability, and April 1, 2006. [JS 3-4].

The ALJ found that prior to April 1, 2006, plaintiff had severe impairments consisting of type I diabetes mellitus that was not well controlled, with recurrent hypoglycemic episodes. [AR 943]. The ALJ determined that plaintiff had headaches that were not severe and had no medically determinable mental impairments. The ALJ noted that the record prior to April 1, 2006 contained no objective evidence of seizures, cognitive impairment, or cavernous hemangioma (vascular brain lesions) that led to the finding that he was disabled on and after April 1, 2006. [See AR 467-478, 522-524, 533-534, 635-652, 956-957].

The ALJ found that plaintiff's severe impairments, either singly or in combination, did not meet or equal an impairment included in the Listing of Impairments. [AR 944]. See 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ further found that prior to April 1, 2006, plaintiff retained the residual functional capacity ("RFC") to lift or carry fifty pounds occasionally and twenty-five pounds frequently, sit without restrictions aside from needing normal breaks every two hours, and stand or walk for four hours total in an eight-hour workday. Plaintiff could not climb ladders, balance, work at heights, operate motorized equipment, or work near unprotected machinery. [AR 944]. The ALJ determined plaintiff could not perform his past relevant work. [AR 947]. Based on the testimony of a vocational expert, the ALJ determined that the plaintiff had acquired transferable skills and could perform alternative jobs that exist in significant numbers in the national economy. The ALJ therefore concluded that the plaintiff was not disabled during the period at issue. [AR 947-948]. The Appeals Council denied plaintiff's request for review. [JS 4].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as

evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**RFC finding**

Plaintiff contends that in formulating plaintiff's RFC, the ALJ ignored objective sensor data reflecting the frequency of plaintiff's episodes of hypoglycemia and hyperglycemia. Plaintiff contends that the ALJ relied on incomplete evidence of the frequency of such episodes because he took into account only the subjective hearing testimony and the records of emergency treatment plaintiff received for fluctuations in his blood sugar levels.

The ALJ relied on the medical expert's testimony that plaintiff's type I diabetes and recurrent hypoglycemic episodes did not preclude him from performing a range of medium work prior to April 1, 2006. [AR 944]. The ALJ noted that plaintiff's medical records documented twelve episodes of treatment for hypoglycemia from 2002 through 2005. [AR 945]. The ALJ concluded, however, "there were no ongoing associated signs or findings reflecting end-organ damage incompatible with medium work prior to April 2006." [AR 945]. Instead, plaintiff's "clinical examinations were generally benign apart from elevated blood sugars." [AR 945]. "[E]ven in 2003, the year during which the most episodes were documented, [plaintiff's] clinical presentations were not incompatible with regular and continuing work." [AR 945].

The ALJ found that plaintiff's subjective allegations of experiencing more frequent or severe hypoglycemic episodes were not corroborated by the record. [AR 946]. The ALJ noted, for example, that during the most recent hearing in July 2009 as well as during the November 2003 hearing, plaintiff and his wife could not remember some relevant details about the period at issue. [AR 946; see AR 994-996, 998-1001]. Similarly, during the November 2003 hearing, plaintiff's testimony "was unclear as to the frequency of alleged hypoglycemic episodes." [AR 946]. During the March 2006 hearing, plaintiff testified that he had been to the emergency room for hypoglycemic episodes "'five or six times' since November 2003," while his wife testified that "it was 'two or three times, maybe even four' in 2005, with 'another three' in 2006 and 'more' than that prior to 2005." [AR 946]. In addition, the ALJ noted that the state agency non-

examining physician, the consultative examining physician, and Dr. Landau all opined that plaintiff was not disabled. [AR 945-946; <u>see</u> AR 125-128, 132-141, 980-985]. The ALJ also remarked that Dr. Webb, a physician who last treated plaintiff in 2003, said in a December 2007 letter that he "had no way of knowing how often [plaintiff] experienced hypoglycemic events." [AR 946].

> The ALJ concluded that while plaintiff's blood sugar level was
> not well controlled during the period at issue, episodes of hypoglycemia for which emergent care was required are not reflected in the record as frequently as alleged, are not reflected so frequently as to preclude the capacity for regular and continuing work, and are not associated in treatment notes with sustained related clinical or laboratory pathology incompatible with medium work.

[AR 946].

Plaintiff argues that the ALJ erroneously ignored record evidence documenting plaintiff's blood sugar level readings from two sensors worn by plaintiff at different times showing "wild fluctuations consistent with hypoglycemia and hyperglycemia." [JS 5]. Plaintiff points to charts in the record documenting "CGMS Sensor" data for four days: Monday, December 12, 2005 through Thursday, December 15, 2005. [AR 231]. A chart breaking down the sensor data states that plaintiff's blood glucose level, measured in mg/dL (milligrams per decilitre), fluctuated between 45 and 289 on Monday, 45 and 294 on Tuesday, 67 and 314 on Wednesday, and 45 and 318 on Thursday. [AR 233]. The chart indicates that a "high" blood glucose level is above 180 mg/dL, and a "low" blood glucose level is under 70 mg/dL. [AR 233]. Notations on one page indicate that the author "spoke to p[atien]t" and made a recommendation to "change carb ratio to 1:10" and increase "basal [illegible] by .01 pt . . . ." [AR 231]. The author's signature is illegible but is followed by the initials "NP," indicating a nurse practitioner. [AR 231].

Plaintiff also points to a 12-week recording of his blood glucose levels obtained from another sensor during the period from January 5, 2006 through March 29, 2006. [AR 286-292]. During that period, plaintiff's average blood glucose level was 184 mg/dL, with a minimum of 55 mg/dL and a maximum of 479 mg/dL. Some insulin level data and pump performance data also are reported. [AR 288]. Plaintiff testified that he started using an insulin pump in 2004 or 2005 [AR 494, 910], prior to the date of both sensor

reports.

Plaintiff's contentions regarding the weight and significance of the sensor data lack support in the record. Those data document fluctuations in plaintiff's blood glucose level above and below the target range during a small fraction of the period at issue. However, nothing in those reports or elsewhere in the record suggests that the sensor data show that plaintiff was disabled. The notations on the December 2005 chart indicate that the sensor data were used as a tool for assessing and improving plaintiff's diabetes management. Plaintiff has not pointed to any record evidence supporting his contention that the sensor data are "arguably the most important evidence in the file," and that those data document episodes of hypoglycemia and hyperglycemia of such frequency and severity that plaintiff was disabled, or had a more restrictive RFC than found by the ALJ, prior to April 1, 2006.

In the absence of any medical evidence suggesting that the sensor data translate into one or more disabling functional limitations, plaintiff's argument that the ALJ improperly rejected that evidence fails. Cf. Morgan, 169 F.3d at 595 (holding that the ALJ permissibly rejected an examining psychologist's opinion that "identified characteristics that *might* limit [the claimant's] ability to work on a sustained basis" but did "not show how [the plaintiff's] symptoms translate into *specific functional deficits* which preclude work activity") (italics added). On the other hand, the ALJ rationally concluded that episodes of low or high blood sugar that produced symptoms that were significant enough to prompt plaintiff or his wife to seek immediate treatment were directly relevant to his RFC, but that those episodes were not so frequent as to preclude him from working. [See AR 945-946].

Furthermore, the record as a whole contradicts plaintiff's assertion that the ALJ completely failed to take the sensor data into account in assessing plaintiff's RFC. The ALJ cited the exhibits containing the sensor data in his analysis of the frequency of hypoglycemic episodes, albeit without specifically discussing that data. [See AR 945 (citing Exhibits 8F (AR 231-255)); AR 946 (citing Exhibit 11F (AR 285-292))]. Additionally, Dr. Landau's testimony suggests that he took that evidence into account in formulating his opinion, which the ALJ adopted. Dr. Landau testified under oath that he had reviewed plaintiff's medical records, which, of course, include the sensor data. [AR 981]. Dr. Landau acknowledged that plaintiff's type I diabetes was "not well controlled" and that plaintiff had "recurrent episodes of hypoglycemia," but he

concluded that plaintiff nonetheless retained the ability to work prior to April 1, 2006. [AR 981]. Asked by the ALJ to explain the basis for his opinion, Dr. Landau explained, among other things, that having "an insulin pump implanted" in 2005 "seemed to improve [plaintiff's] ability to prevent frequent hypoglycemia because I didn't see any after that." [AR 981]. In response to a question by plaintiff's counsel, Dr. Landau also acknowledged that plaintiff's "diabetic control was poor and [his] sugars were up and down." [AR 983]. Dr. Landau's testimony creates the inference that he was aware of, and took into account, longitudinal evidence of plaintiff's blood glucose levels.

Plaintiff was represented by counsel during the administrative hearing in July 2009. Plaintiff's counsel had the opportunity to cross-examine Dr. Landau but did not ask him about the sensor data. [AR 978,983]. Plaintiff was represented by a different attorney during the administrative hearing in November 2007, and by yet another attorney during the March 2006 hearing. [See AR 486, 894]. At the conclusion of the November 2007 hearing, the ALJ left the record open for 30 days for the submission of additional evidence, in particular medical evidence corroborating plaintiff's subjective testimony that he experienced frequent hypoglycemic episodes before April 1, 2006. [See AR 916-924]. A different ALJ presided over the March 2006 hearing; he, too, left the record open for 30 days to permit plaintiff to submit records from his endocrinologist or other evidence concerning the nature and severity of plaintiff's diabetic symptoms. [See AR 515-519]. Therefore, plaintiff had ample opportunity to develop medical evidence regarding the significance of the sensor data and the alleged severity and functional effects of hypoglycemia and hyperglycemia, or to enlist the ALJ's assistance in developing such evidence.

The ALJ did not err in evaluating the medical evidence regarding plaintiff's hypoglycemia and hyperglycemia or in analyzing its effect on plaintiff's RFC.

**Credibility finding**

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for plaintiff's subjective symptom testimony.

If the record contains objective evidence of an underlying physical or mental impairment that is reasonably likely to be the source of a claimant's subjective symptoms, the ALJ is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.

2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008); Moisa, 367 F.3d at 885. "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.1997). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff summarizes his testimony as follows:

> [H]e spends most of the day trying to control his blood sugar level by watching his diet and his activity level. If he over-exerts himself, his blood sugar level sharply decreases, which will cause him to experience symptoms such as fatigue, shaking[,] sweating and fainting. He experiences similar feelings when his uncontrolled blood sugar is significantly elevated. [Plaintiff] testified that, particularly during the period . . . at issue, he spent significant parts of the day lying down because of his uncontrollable diabetes mellitus.

[AR 13 (citing AR 442-443, 446-448, 887-888)].

The ALJ provided legally sufficient reasons for rejecting the alleged severity of plaintiff's subjective complaints.

First, the ALJ reasonably concluded that plaintiff's testimony that he had episodes of hypoglycemia or hyperglycemia that were of disabling frequency and intensity was inconsistent with the relatively limited number of times plaintiff or his wife sought emergency treatment for such episodes between August 2002 and April 1, 2006. [See AR 235, 261, 827-892, 945, 947]. See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir.

1989) (holding that the ALJ permissibly considered discrepancies between the claimant's allegations of "persistent and increasingly severe pain" and the nature and extent of treatment obtained). For the reasons already described, the ALJ did not err in failing explicitly to consider the sensor data in analyzing the frequency with which such episodes occurred.

Second, the ALJ noted that prior to April 1, 2006, plaintiff did not have signs or findings of end-organ damage incompatible with medium work, was neurologically intact, had "generally benign" clinical examinations, and, despite his "variable blood sugars," did not have "sustained related clinical or laboratory pathology" that was inconsistent with the RFC finding made by the ALJ. [AR 945-946]. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Plaintiff argues that "the only real clinical manifestations that should be expected in this case are fluctuating blood sugar levels," but that proposition is not self-evident. [JS 7]. Plaintiff does not point to any medical opinion evidence to back up his argument that the absence of end-organ damage or other clinical manifestations of complications of diabetes are merely "red herrings" that do not amount to substantial evidence supporting the ALJ's credibility finding. [JS 7].

Third, the ALJ remarked that both plaintiff and his wife "admitted at [the] hearing that their recollection of the period in question was not very good," and that plaintiff's testimony during the November 2003 hearing also was unclear regarding his hospitalizations for diabetic symptoms. [AR 946]. During the July 2009 hearing, for example, plaintiff testified that he could not remember whether he had worked during the relevant period, as indicated by social security earnings statements showing earnings in 2005 and 2006; described his daily activities only in very general terms; could not say for sure whether he was on antidepressants; and could not remember the year he last worked; could not recall the name of medication he was prescribed for migraines; and could not remember if his wife worked during that four-year period. Plaintiff's wife testified that she had to call the paramedics "many times," but she was unable to be specific about the number of times she did so. [See AR 979-980, 986-990, 992, 994, 998-1001; see also AR 153-154]. This may not be surprising given the lapse of time involved, but it nonetheless is a valid consideration. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ was entitled to

consider the claimant a "vague witness" because his testimony on certain points was unclear or he lacked recollection, and that use of such "ordinary techniques of credibility evaluation" was permissible).

Fourth, the ALJ permissibly concluded that plaintiff's daily activities as a factor that tended to undermine plaintiff's testimony that his diabetic symptoms were disabling before April 1, 2006. During the November 2003 hearing, plaintiff testified that he cared for his two young daughters four hours a day while his wife was in school, cooked meals for his daughters and himself, read the Bible, occasionally did the dishes, took out the trash, sometimes helped his wife change bedding, watched television, sometimes went places with his wife and daughters, and drove after checking his blood sugar level to be sure it was high enough. [AR 155-156, 157]. During the July 2009 hearing, plaintiff testified that his daily activities during the period at issue included resting, watching television, reading the Bible, attending church, occasional shopping, occasionally helping with the dishes, and microwave cooking. [AR 987-988, 993-994]. While plaintiff's daily activities are not highly probative of his ability to work, there is some inconsistency between his subjective allegations of disabling symptoms and his testimony that he could care for his two young daughters for a significant part of the day during the period of alleged disability. See Morgan, 169 F.3d at 600 (holding that the claimant's ability to fix meals, do laundry, work in yard, and occasionally care for a friend's child contradicted his subjective complaints of inability to work).

Finally, the ALJ noted that the Commissioner's consultative examining physician and two non-examining physicians concluded that plaintiff was not disabled despite his allegedly disabling symptoms. [AR 946]. For example, plaintiff told the examining physician, Dr. Mihelson, that he suffered from fatigue, lack of energy, lack of muscle strength, dizziness, shortness of breath, and other symptoms, but Dr. Mihelson concluded that plaintiff was not disabled. [AR 124-129]. See Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (holding that the ALJ properly rejected the claimant's pain testimony based, in part, on an examining physician's opinion indicating that the claimant was not disabled).

Because the ALJ's interpretation of plaintiff's testimony is reasonable and is supported by substantial evidence, the ALJ's credibility finding will not be disturbed. See Rollins, 261 F.3d at 857.

///

///

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error.  Accordingly, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

June 29, 2011



_____
ANDREW J. WISTRICH
United States Magistrate Judge